Slidell v. Pritchard and another.

John Slidell *v.* George W. Pritchard and another.

An obligation with an unlawful cause, can have no effect. The cause is unlawful when forbidden by law, *contra bonos mores*, or contrary to public order. C. C. 1887, 1889.

Any contract or agreement between an insolvent and one of his creditors, the effect of which is to secure to the latter an undue preference over the other creditors, or to procure for him a renewed claim upon the future property of the debtor, in consequence of which agreement, the preferred creditor's opposition is withdrawn, is illegal and fraudulent, and cannot be enforced. It matters not as to the nature of the opposition, if its withdrawal be the consideration or cause for which the preference is given. Thus, an agreement in consideration of the withdrawal of an opposition to the sufficiency of the security offered by an insolvent, who had been appointed syndic of his own creditors, though the opposition was made after the insolvent had obtained his discharge, of the benefit of which he could not be deprived by any subsequent opposition, is illegal and void. It is sufficient that an undue advantage is derived from it by one of the creditors. The object of the law is, that the rights of all the creditors should remain in the state they were in, at the time of the insolvency ; that no change should take place so as to favor any ; and that the effects surrendered, and the property subsequently acquired, should be equally divided between the insolvent's former and subsequent creditors, according to the nature, rank, and origin of their respective claims at the time of the surrender, or of the contracting of the subsequent debts.

Money paid to a creditor, in pursuance of an illegal agreement with an insolvent, who had been appointed the syndic of his own creditors, to secure the payment of the creditor's claim, in consideration of his withdrawing an opposition to the sufficiency of the security offered by the syndic, cannot be recovered back, either by the debtor, or by an assignee of his property, under a bankrupt law, suing for the benefit of the creditors, or by a security, who may have paid the amount so reclaimed. Though the cause of the agreement was unlawful, it originated in a natural obligation, on which no action could be founded, but which sufficed to prevent the recovery of the money back, when once paid. C. C. 2281, 2282.

Appeal from the Commercial Court of New Orleans, *Watts*, J.

*T. Slidell,* for the appellant.

*Bradford* and *Wray,* for the defendants, contending that the contract, out of which the plaintiff's claim originated was illegal, and that the money already paid to him under it should be refunded, cited Civil Code, arts. 1887, 1889. Chitty on Contracts, 521, 523. 1 Story on Equity, 297, 370, 371, 372. *Jackson* v. *Davison,* 4 Barn. & Ald. 691. *Murray* v. *Reeves,* 8 Barn. & Cress. 854. *Rogers* v. *Kingston,* 2 Bing. 441. *Wiggen* v. *Bush,* 12 Johns. 306. *Perry* v. *Frilot,* 6 Mart. N. S. 217.

*Leggett* v. *Peet et al.,* 1 La. 297.    *Robinson* v. *His Creditors,* 1 Rob. 454.

SIMON, J.   The plaintiff seeks to recover the amount of sundry promissory notes, drawn by George W. Pritchard, to the order of Joseph Tagert, Jr., and endorsed by the latter.   Three of the notes sued on, are dated the 31st of May, 1839, and the fourth note is dated the 4th of November, 1840.   They amount altogether to the sum of $2149 66 ; and were all duly protested for non-payment, at maturity

The defendants resist this claim, on the following allegations : That there was no consideration given for the notes sued on, or, if any, that the same was illegal and void.   That the maker of the notes sued on, having sued his creditors for a voluntary surrender of his property, was elected syndic of his creditors, and gave bond according to law.   That the plaintiff, who was one of the creditors, made opposition to the security offered by Pritchard, with a view of coercing said Pritchard into a compromise.   That on the 31st of May, 1839, thereunto persuaded and induced by the plaintiff, Pritchard delivered to him his six notes, each for $583 22, payable at certain periods, endorsed by his co-defendant Tagert. That upon obtaining said notes, plaintiff withdrew his opposition to the security offered by the syndic.   That two of the notes were taken up by the defendants, who paid also a sum of $183 22, on account of the third note, in lieu of which another note of $400 was given to the plaintiff, as the balance due thereon ;—and that the notes sued on, are the same which were given in consideration of the withdrawal of the opposition, and of the renewal of one of them.

The defendants further aver, that the payments by them made, amount to $1349 66 ; that no consideration, valid in law, was ever given for the notes ; that the contract being *nudum pactum*, is not binding upon them ; and that they are entitled to recover back from the plaintiff the money already paid on said notes.

The answer further states, that the claim originally held by the plaintiff against Pritchard & Co., consisted of five notes of $791 12 each, drawn by the late firm of Puech & Duplessis, and indorsed by G. W. Pritchard & Co., upon which judgment had been obtained by said plaintiff, against the drawers, in the Com-

Slidell v. Pritchard and another.

mercial Court ; that a certain receipt was given by plaintiff, for the notes sued on, and the other notes taken up, from the tenor of which it appears, that the defendants are liable merely as sureties of the debt of Puech & Duplessis ; that said plaintiff might have satisfied his judgment against said firm, had he taken out execution, and seized and sold certain property held under mortgage arising from the registry of said judgment; and that, owing to the plaintiff's neglecting to collect his debt, when it was in his power to do so, the defendants are discharged from all liabilities as sureties of said debt, &c.

They pray for judgment cancelling the notes sued on, and that they may recover from plaintiff the sum of $1349 66, with interest, on their reconventional demand.

The plaintiff answered the defendants' reconventional plea, by explaining the circumstances under which the notes were executed, and the receipt given ; showing that they were so executed at the same time that the opposition by him made to the security offered by the insolvent syndic was withdrawn. He alleges, that said opposition was made, because said security was utterly insufficient, and because he feared that Pritchard would not faithfully discharge the trust confided to him ; and he adds, that Pritchard, having given notes for the balance due by him, with a satisfactory endorser, there was no longer any motive for continuing the opposition, and, consequently, it was withdrawn.

The inferior tribunal rendered judgment against the plaintiff on the principal demand ; and ordered, that on the demand in reconvention, G. W. Pritchard recover of the plaintiff, the sum of $1349 66, with legal interest. From this judgment the plaintiff has appealed.

The consideration of the notes sued on, and of those which were taken up by the defendant, Pritchard, is fully established by the evidence. Nay, it seems even admitted in the pleadings, that those notes were executed with a view to effect a compromise between the plaintiff, and the insolvent syndic, in consequence of the opposition which had been made by the former to the sufficiency of the security offered by the latter, and that the opposition was withdrawn, after the delivery of the six notes to the plaintiff.

From the facts of the case, and the state of the pleadings, two questions have been raised :

1st. Was the withdrawal of the opposition, in consequence of which the notes were given, such an illegal consideration as to invalidate the contract, and destroy the plaintiff's right of recovery ? Was it a fraud upon the statute, creating a preference, secured to the opponent, to the prejudice of the insolvent's former and subsequent creditors ?

2d. Can the defendant, Pritchard, or his assignee, (made a party to this suit during the pendency of the appeal,) be allowed to recover back the money paid to the plaintiff, in execution of the insolvent's renewed obligation ?

I. One of the principles applicable to all civil obligations is, that an obligation, with an unlawful cause, can have no effect ; and the cause, says our Code, is illicit when it is forbidden by law, when it is *contra bonos mores*, or contrary to public order. Civil Code, arts. 1887, 1889. Under these principles, it has been repeatedly held in our jurisprudence, that any contract or agreement, made between the insolvent and one of his creditors, having the effect of securing to the latter an undue preference over the other creditors, or of procuring him a renewed claim upon the future property of the debtor, in consequence of which agreement, the preferred creditor's opposition is withdrawn, is illegal and fraudulent, and cannot be enforced. 6 Mart. N. S. 217. 1 La. 297. 1 Robinson, 454. It matters not as to the nature of the opposition, if its withdrawal becomes the consideration, or *cause*, under which the preference is obtained ; and it suffices, in our opinion, that an undue advantage is derived from it, in favor of one of the creditors, to consider the new contract as made in fraud of the opponent's co-creditors, or of the insolvent's subsequent creditors. The object of the law is, that the rights of all the creditors of an insolvent, should remain in the same state they were in at the time of the insolvency ; that no change should take place so as to favor any of them ; and that both the effects surrendered, and the property subsequently acquired, should be equally divided, under our insolvent laws, between the insolvent's former and subsequent creditors, according to the nature, rank, and origin of their respective claims, at the time of the surrender, or of the con-

tracting of the subsequent debts. Chitty, on Contracts, p. 225, says : " An agreement between an insolvent and one of his credi-tors, (consenting to, or signing with other creditors, a deed, or other instrument of composition,) that the insolvent, or his friends, should pay a further sum of money, or give a better or other se-curity, than such as is stipulated for in the deed, is void, as a fraud on the other creditors ; for where the creditors, in general, have bargained for an equality of benefit, and mutuality of secu-ity, *it shall not be competent for one of them to secure any partial benefit or security to himself.*" And at page 226, he says : " *Any agreement between the insolvent and one of his creditors, to secure to the latter a claim on the future effects of the debtor, in conside-ration of the creditor's withdrawing his opposition to the discharge, or otherwise, is void, as a fraud on the other claimants.*" See also Story on Equity, vol. i. p. 370.    2 Bingham, 441.

Now, in this case, what was the nature of the opposition, the withdrawal of which, became the consideration of the notes sued on ?    It was an opposition to the appointment of the insolvent him-self, as syndic of his own creditors ; or, in other words, to the suf-ficiency of the security, without which he could not act as syndic. This opposition, though made by one creditor, was to be for the benefit of the mass.    The knowledge which the plaintiff had of the utter insufficiency of the securities offered, would have turn-ed to the advantage of all the creditors ; and the concealment of such knowledge, by the withdrawing of the opposition, was made the consideration of a contract, by which the plaintiff was to ac-quire a superior claim on the future effects of the insolvent.    It seems to us clear, that such contract cannot receive any sanction at our hands.

It has been urged, that the opposition was not made to the in-solvent's discharge, but only to his acting as syndic ; that Prit-chard, syndic, and Pritchard, insolvent, are not the same ; and that to oppose the discharge of the insolvent, or the security of the syndic, are not the same.    This distinction appears to us un-sound, and is more specious than solid.    It is true, that the oppo-sition was made after the insolvent had obtained his discharge, under our insolvent laws, of the benefit of which he could not have been deprived by any subsequent opposition ; but the result

was the same, to wit, a preference granted and secured to the opponent, amounting to a fraud upon his co-creditors, and a fraud upon the law. This preference is prohibited by law ; and the contract by which it is obtained, cannot be viewed in any other light but as an illicit one. The cause which gave rise to it, was one which concerned the interest of all the creditors ; and the withdrawal of the opposition, being by itself injurious to them, could not be made the consideration of an obligation by which their rights were to be subsequently affected. We agree with the Judge, *a quo,* in the opinion, that " the bargain was made in relation to an important part of the insolvent proceedings, and one in which all the creditors were interested, that it should be conducted in a fair and open manner." We conclude, that no benefit can be legally derived from such a bargain.

II. This is one of those cases in which courts of justice ought not to interfere to relieve either party, according to the maxim, " *Ex turpi causa non oritur actio.*" 4 Mart. 49. 6 Ib. 548. 3 Ib. N. S. 46. 7 Ib. N. S. 423. It follows, therefore, that if the law denies to the plaintiff the right to recover in this action, it also precludes the defendant from recovering back what has been paid in execution of the illicit contract. So, in the case of a gambling debt, the law grants no action for the payment of what has been won at gaming, but it also refuses to suffer the loser to reclaim what he has voluntarily paid. Civil Code, arts. 2952, 2953. So, usurious interest cannot be enforced, but when once paid, cannot be recovered back. So, even in the case of a man's having received a sum of money to commit a crime, Toullier, vol. vi. No. 126, says, " *Si la somme qui en était le salaire a été payée en vertu de la convention, celui qui l'a donnée, ne peut la répéter ; le mal est fait, et la faute commise ne peut être un titre ni un prétexte, pour répéter ce qui a été donné.*"

But, in this case, the obligation cannot be considered as an immoral one, in the true sense of the word. It was one with an unlawful cause ; that is to say, forbidden by the civil law. Its origin was, at least, a natural obligation, from which no action could be derived, but which is sufficient to prevent the recovery of what may have been paid in execution of it. Our law says : " *to acquire the right of reclaiming what has been*

*paid, it is necessary that the thing paid be not due in any manner, either civilly or naturally; and a natural obligation to pay, will be sufficient to prevent the recovery.* Civil Code, art. 2281. Article 2282 provides, that " a thing not due is that which is paid on the supposition of an obligation which did not exist, or *from which a person has been released.*" Surely, it cannot be pretended that Pritchard was, by his surrender under our laws, released from the payment of his debts. He was only discharged from imprisonment, but his obligations still existed; and if, subsequently, he thought proper to satisfy them, although he was not legally bound to do so, except in the manner prescribed by law, in case of his acquiring new property, this cannot entitle him to reclaim the amount by him paid in execution of an obligation from which he was not released. Toullier, vol. 6, Nos. 387, 388, and 392. It seems to us incorrect to say, that for the same reason that the law repudiates the enforcing of the illegal agreement, which took place between the plaintiff and the defendant, *a fortiori,* ought this court to allow an action to recover back the money paid in compliance with it. The rule is : *si ob turpem causam promiseris Titio quamvis si petat, exceptione doli mali, vel in factum summovere eum possis ; tamen si solveris, non posse te repetere.* And the reason is, *si et dantis et accipientis turpis causa sit, possessorem potiorem esse : et ideo repetitionem cessare, tametsi ex stipulatione solutum est.* Dig., De Condictione ob turpem causam, lib. 12, t. 5, l. 8. This rule is clearly in accordance with the principles of our law, and is fully applicable to the present case.

It has been said, that the present suit is now prosecuted by the assignee, for the benefit of the mass of the defendants' creditors ; and hence, it was argued, that the objections against a recovery by the defendants, of the money by them paid, do not apply to a recovery by the assignee, who is not liable to any exception as *particeps criminis.* There is no evidence in the record, showing that the defendants had taken the benefit of the bankrupt law. This results only from a suggestion that was made by their counsel, that it was necessary to make their assignee a party to this suit. But, supposing the fact to exist, and to have been legally established, it cannot operate any change in the rights of the par-

ties. It is clear, that the reconventional demand set up by the defendants cannot be successfully sustained; and we can see no good reason why their assignee should acquire any greater right. He must prosecute the defence of this suit as he found it; and it seems to us, that the plea, that the payment made was injurious to the defendants' new creditors, cannot avail the assignee, whose duty it is to exercise the rights and actions of the bankrupt, in the situation in which he finds them at the time of the bankruptcy. If the defendants cannot claim the refunding of the amount by them paid, the assignee cannot. The defendants' subsequent creditors never acquired any right to the money reconvened. This money cannot be considered as belonging to the bankrupt's estate. It had been paid long before the opening of the bankruptcy; and, at any rate, it cannot make a part of the actions, rights, and credits assigned by the insolvent to his creditors, since the debtor had none to exercise.

It is therefore ordered, that the judgment of the Commercial Court, so far as it rejects the plaintiff's demand, be affirmed; that as to the reconventional demand, which was sustained and allowed by the inferior court, said judgment be annulled and reversed, and the reconvention rejected; and that the costs in the court below be paid by the plaintiff and appellant; those in this court to be borne by the defendants and appellees.