On Application for Rehearing.
The opinion of the court was delivered by
Miller, J.
The question in this case is whether the appellants, the Successions of Seraphin Hymel, of Octave Hymel, Joseph R. Hymel, Mrs. Florian E. Tassin and Denis Lanaux, are pledge creditors of the late Pierre Lanaux. The account of the executor of the deceased recognized the pledges, and from the judgment of the lower court maintaining the oppositions of ordinary creditors of the deceased, and adjudging that the appellants were not pledge creditors, they prosecute this appeal. The case has been elaborately argued in the court, both on the original trial and on the rehearing, and has engaged our serious attention.
The full argument in this court has served to eliminate from consideration a mass of testimony contained in the voluminous record, well calculated to cloud the issue and mislead the court. At the outset, it may be stated, we regard the debts of the creditors asserting the pledges as established. The pecuniary condition of Pierre Lanaux is unimportant, as this is not the revocatory action. It is no *1046 consequence in this discussion that Pierre Lanaux, the deceased factor, had annually for years balances in his hands derived from the sale of the crops of the asserted pledge creditors; was accustomed to invest for them their balances, and all evidence tending to show that the asserted pledges were such investments, has no bearing on the controversy, the creditors claiming as pledgees, not as owners, for whom the securities had been bought by their agent. The claim of ownership, and at the same time as creditors, entitled to the bonds as pledgees would 'be inconsistent, besides admitting of no support under the facts, and the creditors properly elected in the lower court to stand on their asserted pledges.
The controversy is between the creditors asserting these pledges on a large amount of the securities of the debtor, and the mass of his creditors interested in disputing the pledges, so as to secure the application of all the debtor’s assets to the payment of his debts. The requisites of the pledge are well defined. The agreement consummated by delivery of the property pledged to the creditor, or the possession of the property by a third person, agreed on to hold for the creditor, are the essentials. There is no substantial difference between our Code and the general commercial law on the subject, and in one of the recent text books the articles of our Code are incorporated as expressing the commercial law. In this case there is no pretence of any delivery to the creditors. The claim of the asserted pledge creditors is the securities were placed in the possession of a third person to hold for them. Civil Code, Arts. 3133, 3152, 3162; Code Napoleon, Art. 2076; Jones on Pledges, Secs. 23, 27, 28, et seq.; Laurent Droit Civile, 28th Vol., p. 162, pars. 464, 470, 471, 484; 7 Boilleux Commentaire du Gage, p. 129.
The pledges are asserted to have been made in August, 1892. Pierre Lanaux, the debtor, died in September, about a month after. There was no intercourse between the debtor and Denis Lanaux, one of the alleged pledge creditors, having any reference to the pledge claimed for him. We draw the conclusion from the record that there was none with Seraphin Hymel, another alleged pledge creditor, leaving out of view the hearsay testimony of statements from him that his balance in the hands of the deceased factor was safe, or had been invested. With two others of the creditors claiming privilege, Octave Hymel and Joseph R. Hymel, there appears to have been intercourse prior to the time of the asserted pledges, *1047 from which these creditors derived the understanding, or were assured by the deceased factor, their balances in his hands would be or were invested, and their securities placed in the safe of the New Orleans Insurance Company, in the vault of the branch depository of the State National Bank in this city. The deceased factor was president of both institutions. With Mrs. Tassin, another of these creditors, the communications of the deceased factor were of a more special character. Her balance in his hands in July, 1892, was large, and she was solicitous to have it secured, i. e. invested in State bonds. He submitted to her his plan thus: He would make his note for forty thousand dollars, secure it by a pledge of State bonds and other securities, place note and securities in the hands of George DeJahan, his clerk, instruct him to put the note and securities in a bank box, in the safe of the New Orleans Insurance Company, in the vault of the branch bank, to which George Lanaux, the secretary, had sole access; at the same time he would instruct him to hold the box subject to the order of DeJahan, having the key of the box, and who would be directed to deliver the note and securities on her request. To this plan Mrs. Tassin assented.
With this review of the relations and intercourse of the deceased factor with his creditors, the next phase of this controversy is the method of execution of the asserted pledges. On the 3d of August, 1892, Mr. Lanaux directed his clerk, Mr. DeJahan, to make five notes; one for Mrs. Tassin for her balance of forty thousand dollars, one for thirty-one thousand dollars in favor of Octave Hymel, one for twenty-seven thousand five hundred dollars in favor of Seraphin Hymel, one in favor of J. R. Hymel for twenty-five thousand dollars, and another for ten thousand dollars in favor of Denis Lanaux; to attach to each note securities deemed adequate to secure it; to place notes and securities in five packages, each marked the property of the creditor for whom the contents were intended, and to put the sealed packages in a bank box, for which, Pierre Lanaux told his clerk, George Lanaux would call. All this was done, and De-Jahan, the clerk, was instructed to deliver the packages to the creditors. On the day previous, George Lanaux had been requested by Pierre Lanaux to put a bank box in the safe of the insurance company, adding that DeJahan would give the box. On the day following the making up of the packages and placing them in the box, it was taken from Pierre Lanaux’ office by DeJahan and *1048 George Lanaux, and deposited in the safe of the insurance company, in the vault of the branch bank. DeJahan had the key of the box, George Lanaux the combination to open the safe. Nothing was said by Pierre Lanaux, or by DeJahan, to George Lanaux in reference to the box, save the request from Pierre Lanaux to deposit it, and, of course, there was no syllable of reference to its contents. It bore the name of the deceased factor, and contained, besides the packages, his will appointing Denis Lanaux his executor. Not a single security was ever delivered from the box. It was untouched from the time it was placed in the safe at Pierre Lanaux’ request until his death, when it was opened under the order of the court to search for his will and inventory his property.
The claim of the creditors asserting pledges on the contents of the box, on the theory that the securities in their debtor’s bank box are to be deemed not in his possession, but in that of these creditors through a third person supposed to hold for them, is fortified, it is urged, by the directions of Pierre Lanaux to his clerk to deliver the packages, and by the fact that the directions at the request of Pierre Lanaux were communicated by his clerk to the creditors or some of them. The testimony on this branch of the case appears to be about this: the information was given to Octave Hymel and Joseph R. Hymel that their funds in the hands of the deceased factor had been invested for them, were in the safe of the insurance company, and, to use the language of the witness, they ratified the investments. The testimony of DeJahan on this point is in some degree conflicting, apt to occur in the testimony of any witness subjected to protracted examination and cross-examination as to details, but giving effect to all his testimony and that of others, it is our conclusion, his communications to Joseph R. and Octave Hymel may be epitomized in the reference by him to the investments in the safe of the company. To Mrs. Tassin, the communication of DeJahan was in effect, that all had been done with reference to the pledge as proposed to her by Pierre Lanaux, that is, the execution of the note placing the note and securities in the package marked for her; the package in the box, the box in the safe of the company, in the bank’s vault, his instructions to deliver to her, and DeJahan also stated that he and George Lanaux had accepted the commission confided to them by the deceased. This last statement conveyed the inference of the witness, but the fact is, George Lanaux, entirely *1049 ignorant of the contents of the box, had no such commission and had never even heard of it.
It is substantially on this state of facts this court is now called on to sustain pledges of securities in the debtor’s bank box, never taken from it till his death, and then by his executor. It is urged on us that the facts bring the asserted pledges within the essentials so plainly expressed in the Oode, that no pledge exists without actual delivery to the creditor or to a third person for him. The symbol of the pledge in the Roman law is the fist of the creditor closed on the pledge, denoting that actual possession which all recognize as linked to the pledge, and without which none can exist. We are, responding to the case of the creditors, to hold that these securities in Pierre Laneaux’ box in bank, directed to be delivered, but never taken from it, are, notwithstanding, to be deemed not in his possession, but in that of some third person for the creditors. If we are to reach any such conclusion, it must be on some theory of constructive possession not capable of easy appreciation.
We can hardly conceive, even on this theory urged on us of constructive possession, or constructive holding, how the cases of the Hymels and Denis Lanaux can be supported. The intercourse with Octave and Joseph R. Hymel with the deceased factor, and subsequently after his death with DeJahan,. that can be deemed to have the faintest relation to these securities, has been stated. It will not be pretended in that intercourse any one was agreed upon or suggested to bake possession of the securities for them, still less can it be maintained there was ever the shade of any such possession, unless packages in Lanaux’ box is to be deemed not in his, but in the possession of some other. With respect to Denis Lanaux and Seraphin Hymel, there was no intercourse with reference to the box or its contents. A day or two after the death of Mr. Pierre Lanaux, DeJahan spoke to Denis Lanaux of a letter in the box for him. That was all he ever heard of the box until the opening, under the order of the court, disclosed the package marked with his name. With Seraphin Hymel all intercourse or knowledge of box or contents is a blank. The claims of these, the Hymels and Denis Lanaux, may at once be laid aside. There is no pretence of delivery to them of the asserted pledges. It would do violence to the record were we to maintain that there was ever the selection of any third person to hold the securities for them, and still greater violence, if we held there was the shadow of any such possession.
*1050 Is the case of Mrs. Tassin any stronger ? The actual custody of the box containing the securities when Lanaux died is susceptible of no dispute. Whether George Lanaux, who received it from Pierre Lanaux nor the company nor the bank in whose vault the box was placed, is deemed custodian, is immaterial. Oould the possession of any one of them be deemed that of Mrs. Tassin ? Neither George Lanaux, or the company or the bank had the slightest intimation of her non-asserted interest in the contents of the box. With the fact that must be conceded, that the box, was thus received and thus held, it is plain that no other relation of ownership or accountability grew out of the deposit of the box other than that arising daily when the customer sends his box to the bank. It must be apparent then, that George Lanaux held this box for Pierre Lanaux, and in no sense for Mrs. Tassin, whose asserted pledge rests on the theory of her possession, actual or constructive of the securities claimed by her in that box. The fact that George Lanaux received the box from, and held it for Pierre Lanaux, must be accepted and exert its influence in the solution of the vital issue as to the possession of these securities.
Whatever qualifications may be claimed to arise from the previous negotiation between Mr. Lanaux and Mrs. Tassin in reference to the asserted pledge, or from the fact that subsequent to the negotiation he placed the package of securities bearing her name in the box, or from the additional circumstances that the clerk of the debtor with the key of the box had his instructions, never fulfilled, to deliver to her the package, and that these instructions at the request of the debtor had been communicated to her, still, whatever the force, if any, of these qualifications, or of any other the record exhibits, the unalterable fact remains that when the death of the debtor occurred which fixes the rights of all creditors as they exist at that moment* the securities now claimed to have been in the possession of a third pei’son agreed on to hold for the creditor asserting the pledge were in the debtor’s bank box deposited as his property. There is in this branch of the case another impressive feature. When Pierre Lanaux unfolded his plan to secure Mrs. Tassin the payment of the large balance in his hands, along with the placing the note in her favor and the package of securities bearing her name n the box, and along with the instructions for delivery to his clerk, and the deposit of the box, it was part of that plan that George *1051 Lanaux receiving the box, was to be instructed to hold the box subject to the order of the clerk. If these instructions hadbeengiven and accepted, as doubtless they would have been, by George Lanaux, the-case of Mrs. Tassin would at least in this respect have presented a different aspect. There would have been the basis for the argument, to whatever extent it might avail, that the box was held for DeJahan along with his mandate of delivery to Mrs. Tassin. But the deceased factor, sick when the proposed pledge was discussed and attempted to be carried into effect, and unfitted for business, failed to bear in mind the precautions devised by him for the protection of the creditors. Death closed his lips without any instructions to George Lanaux in respect to the box. The record placed George Lanaux before the court as holding the box for him whose name it bore, and from whom it came. It can not therefore for one moment be contended that he bore the slightest relation to Mrs. Tassin. When the pledge is consummated by delivery to the third person to hold for the-creditor, it is the natural result that a liability at once arises between the third person, thus selected, and the creditor. Now such liability in this case existed. Laurent thus puts it: “L’Article 2076 admetque le créaneier gagiste est mis en possession lorsque le gage a été remis á un tiers, convenu entre les parties. II faut done une convention qui établisse un lien entre le tiers et le créaneier gagiste, de sorte que le créaneier gagiste posséde par l’intermédiaire du tiers.” Laurent, 28 Vol., p. 484. This case can be supported on no theory that George Lanaux held for the creditor, of whose asserted interest in the box he was ignorant, and to whom he sustained no relation whatever of trust or liability.
It ispnsisted, however, that the court, in solving the issue of the possession of these securities claimed by Mrs. Tassin as pledged to-her, shall hold for naught that they were in the debtor’s box, deposited and held for him, and never taken from it except by his executors when the debtor’s death occurred. It is claimed that the-pledge and possession of Mrs. Tassin is to be supported on the theory that George DeJahan had been selected to hold possession of the-pledges for her and actually had that possession. Her whole case-rests on that theory. Is it to be maintained that DeJahan ever was chosen to take these securities into his possession, or that he ever had the vestige of any such possession? All must realize the exaction of the Code that actual delivery of the pledge must be made to- *1052 the creditor, or possession delivered to a third person chosen by debtor and creditor to hold for the creditor. What the Oode means by this selection of a third person to hold for the creditor, and by his possession of the pledge, requires no comment. Was DeJahan ever clothed with any such agency or vested with any such possession? DeJahan’s whole function with respect to the securities was derived from the order of his employer. That was to place the package of securities in his employer’s bank box and deliver the package on the call of the creditor. That order certainly did not authorize the clerk to take the securities into his possession, to hold them for the creditor. Nothing of the kind was contemplated. If the creditor had called, she doubtless would have obtained the securities and thus obtained the possession essential to perfect the pledge. No such call was made, and the securities remained in the debtor’s bank box undelivered. The clerk never conceived he had any authority to remove the securities from the bank box. When the creditor demanded the securities, after the debtor’s death, the clerk declined, stating his authority ceased with the death; adding, however, the creditor’s right would ultimately be secured. His refusal without any qualification, in our opinion, defined his power, because death revokes all unexecuted orders of the principal. There was then no agreement whatever that the securities claimed as pledged to Mrs. Tassin should be put in possession of the clerk, as a third person, to hold for Mrs. Tassin. Nor does it in the least affect the question that the clerk communicated the order of his employer to deliver to her, nor that she signified her assent. No license of construction enables us to transform an order of the employer to his clerk for the delivery, if called for, of securities from the employer1^ box in bank, into a mandate that the clerk shall remove the securities and take them into possession to hold for the creditor. Least of all, can we hold the clerk ever had that possession. Placed in the debtor’s bank box, deposited and held as his property, the securities remained untouched until his death, and then were removed only by his executor to inventory the debtor’s property. There was clearly no' delivery of the securities, none to the creditor, none to a third person to hold for her. The pledge was inchoate, a delivery proposed but never accomplished. The case is of the class of pledges proposed but not perfected, and nothing is better settled than that an inchoate or executory contract of pledge, not per *1053 fected by delivery, confers no rights as against other creditors. The death of the debtor fixes the rights of the creditors as they exist at that moment. The same rule is enforced when the debtor makes a surrender of his property to his creditors. No delivery had been made when that death occurred; none after was possible. Civil Oode, Arts. 3133, 3152, 3162, 3182, 3183, 3185; 12 Rob. 243; 2 An. 872; 5 Rob. 101; 3 An. 582. See the cases collected in 1 Hennen’s Digest, p. 686, No. 7; 2 Hennen’s Digest, p. 1504, No. 1. The creditor’s ease lacks the life of the pledge in a controversy with creditors, i. e. delivery.
In a commercial community, especially, it is of importance the law of pledge should be clearly understood, and that requisites of common acceptance should not be made uncertain. The creditor’s case exacts, we think, that the test of our law shall be displaced. The case may receive appropriate illustration by supposing that precisely such a pledge as is claimed here for Mrs. Tassin was proposed to any bank or business man. The proposition would be the execution of the borrower’s note with securities attached, the note and securities placed in a package, marked with the lender’s name, the package placed in the debtor’s bank box, the box deposited in bank by the debtor, his clerk instructed to deliver the package on the call of the creditor, and the creditor notified when all this is done, and of the instruction given the clerk. Does any one suppose that a dollar could be obtained on any such so-called pledge of securities to be kept in the debtor’s bank box, supplemented by his direction to the clerk for delivery to the creditor? Would any one suppose that unless that delivery was obtained there would be any pledge as against creditor of the debtor? On the contrary, the prompt answer of any bank to any such proposition would be, that putting securities in the debtor’s bank box with all the formalities and instructions indicated, was neither delivery to the creditor nor to a third person to hold for him, and hence there was no pledge. If a pledge, dependent as it is on delivery to the creditor, or the third person to hold for him, can be accomplished in the mode we are asked to recognize in this ease, i. e. of securities never out of the debtor’s bank box from the time he placed them in it until his executor took charge of them, there would be no limit to the pledges the debtor might make of the same property. To ■ each lendor the debtor might tender the security of his own bank box, *1054 with the directions to his clerk of delivery to the creditor. The delivery obtained by any of those relying on this bank box pledge would demonstrate that all the others had no pledges. This theory ■that pledges can be made without the complete dispossession of the •debtor, and that the pledge may be consummated by marking the ■creditor’s name on the package of securities in the debtor’s bank box, supplemented by his unexecuted order for delivery given to •his clerk and communicated to the creditor, finds its answer in our ■Code, in the text books and adjudicated cases. That answer is: the pledge requires possession in the creditor. Without that possession the pledge is inchoate or “executory” only as between the debtor and the asserted pledge creditors, but gives no right whatever as against other creditors.
Boilleux thus puts it: “ Une appréhension manuelle est de 1’essence du contrat de gage, on congoit que le législateur ait du subordonner les droits du créancier a cette condition, puisqu’il ne s’agit pas d'un privilege proprement dit, c’est-á-dire d’un droit attaché a la qualité de la créance; mais d’une préférence fondée sur les possessions: si le débiteur ne se dessaissait pas le gage ne serait pas qu’une source de fraudes, ríen ne l’empécherait pas de conferer successivement a plusieurs personnes des droits sur la chose” (7 Boilleux, p. 129). This commentator on the Napoleon Code is felicitous in his development of the policy to guard against frauds that require the complete dispossession of the debtor of the pledged "property, but all the text books insist on that dispossession. See in addition to the authorities cited Story on Bailments, Sec. 299; Casey vs. Cavaroc, 96 U. S. 477; Story on Agency, Sec. 367 et seq.
Adhering, as we think, to the text and spirit of the Code, it is our ■conclusion the pledge claimed for Mrs. Tassin was never-perfected. There was neither delivery to her nor possession for her in a third person. The bonds and securities claimed as pledged to her, never delivered but in the debtor’s possession at his death, are to be deemed the common pledge of all his creditors. Civil Code, Art. 3183.
It is therefore ordered, adjudged and decreed that our former judgment be avoided and set aside, and it is now ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.