## No. 13,655.

## SUCCESSION OF JOHN J. GRAGARD, EDWARD PIERSON, ADMINISTRATOR, VS. METROPOLITAN BANK.

### SYLLABUS.

1. The administrator of the succession of a bailee is entitled to continue the possession of his decedent, and has an action to revendicate this possession as against a mere trespasser.

2. While a pledgor may not contest the validity of a pledge for want of delivery, his administrator, in case the succession is insolvent, may ; the administrator being the representative not of the decedent, but of the creditors of the succession, whose right to contest such pledge cannot be denied.

3. Under the law of Louisiana a warehouse receipt is not the ordinary warehouse receipt of commerce, but is a technical instrument governed both as to its issuance and as to the manner of its pledge by statute ; and a material departure from the provisions of this statute, either in the form in which the warehouse receipt is issued, or in the manner in which it is given in pledge, is fatal to the validity of the pledge of such a warehouse receipt.

4. A warehouse receipt in the form prescribed by Act 72 of 1876 may stand for the goods themselves, in such way that its delivery will operate a delivery of the goods ; but in order that this should be, the receipt must represent specific goods, or, at any rate, must represent a specific part of a uniform mass ; a lot of cotton bales cannot be treated as a uniform mass, it being possible that there should be between the component bales a material disparity.

5. Delivery is essential to the validity of a pledge.

6. In ascertaining the rank of creditors on the property of the decedent, the legal situation is to be taken as it was at the moment of the death.

7. Considering that the cotton in controversy was being held to await better prices, and that the defendant took possession of said cotton and sold it without right, the defendant is made to account for the value of said cotton not at the price at which the cotton was sold, but at the market price which obtained a few months after the sale.

8. A bank may attribute money on deposit to the payment of a debt to itself by its depositor where it holds from the depositor a special mandate to that effect.

9. The cotton consigned to a commission merchant for sale may be demanded at any time from the commission merchant or from his administrator by the consignor upon payment of the indebtedness of the consignor to the commission merchant.

APPEAL from the Civil District Court, Parish of Orleans.—*St. Paul, J.*

*James F. Pierson* and *Horace E. Upton,* for Edward Pierson, Administrator, Plaintiff, Appellant.

*Dinkelspiel & Hart (Samuel L. Gilmore,* of Counsel), for Defendant, Appellee.

*Dennis M.* and *Allan Sholars,* for Florence P. Williams and Husband, Intervenors, Appellants.

The opinion of the court was delivered by

PROVOSTY, J.   The administrator of the Succession of John J. Gragard brings this suit against the defendant bank to recover 570 bales of cotton alleged to have been illegally and wrongfully taken possession of by the defendant bank after the death of the decedent, and to recover the value of said cotton in default of the cotton itself; also to recover judgment against the defendant bank for $2500.00 damages alleged to have been caused by the taking of said cotton, and for $909.82 alleged to have been on deposit in the defendant bank at the death of the deceased.

The defendant bank excepted that the petition disclosed no cause of action; and, on the overruling of said exception, answered to the merits pleading the general issue; and pleading specially that it took the cotton by right of a pledge executed in its favor by the deceased: and that it imputed the money on deposit to the payment of a debt due to it by the deceased.

We think that the petition does show a cause of action.   The administrator of the succession of a bailee is entitled to continue the possession of his decedent and has an action to revendicate this possession as against a mere trespasser; Thompson on Pleading and Practice, Vol. 15, page 520, No. 4; Story on Bailments, Secs. 93 and

94; Section d' f'; Clay vs. Fisher, 2 Ann. 997; Fowler vs. Cooper, 3 La. 216; Johnson vs. Imboden, 4 Ann. 178; 7th Ann. 111; and if the allegations of the petition be taken for true, as must be done on exception of no cause of action, the defendant bank is a mere trespasser.

On the merits it is urged that the decedent did not have, and his administrator has not, a standing to contest the validity of the pledge. This is true of the decedent, but not of the administrator. The latter represents the creditors—the succession being insolvent—and in this suit he is enforcing the rights of the creditors. At the death of a person his creditors, except mortgage creditors, are denied all action to enforce payment of their debts, except through the appointment of an administrator, and through this administrator as their agent. Code of Practice, 987, 1053; Hennen's Digest, Vol. 2, page 1503, No. 2, page 1504; Nos. 8 and 12; Carter vs. City, 33 Ann. 817; State vs. Brown, 32 Ann. 1020; Succession of Lange, 46 Ann. 1020; Succession of Ogden, 10 R. 467; Carter vs. McManus, 15 Ann. 642; William vs. Clark, 36 Ann. 747; Succession of Hood, 33 Ann. 464; Succession of Lehmann, 41 Ann. 991; Poultney's Heirs vs. Cecil's Executors, 8 La. 414; Scarborough Case, 43 Ann. 315; 44 Ann. 292. See also 28 Ann. 180; and particularly Succession of Harkins, 2 Ann. 925. To deny to this administrator, therefore, a standing to contest the validity of a pledge would be to deny the same right to the creditors; and to deny the right to the creditors would be the exact equivalent of asserting one of the two things, either that under Louisiana law invalid pledges are as effectual as valid pledges, or that under Louisiana law invalid pledges are made valid by the death of the pledgor. We think that there can be no doubt that an administrator, as the representative of the creditors, has an action wherever the creditors have one, and we think there can be no doubt that creditors have an action to test the validity of a pledge by their debtor. The property of a debtor is the common pledge of his creditors, unless there exists between the creditors some lawful cause of preference. Civil Code, Article 3183. Whether there exists such lawful cause of preference is plainly a question which creditors have a right to test. Defendant will hardly claim that by taking possession of the cotton, as it did after the death of the common debtor, it cut off all the other creditors from their right to test the existence of the pledge. If the defendant had no pledge, and for the purpose of the present discussion the assumption is that it

had none, it committed a wrong in taking the cotton; and it cannot profit by its own wrong. Besides, the rights of all parties became fixed at the death of the common debtor, and no subsequent act has changed the legal situation from what it then was. Hennen's Digest, Vol. 2, p. 1504, No. 1.

Did the defendant bank have a pledge? To show the existence of the pledge it relies upon three acts of pledge in which the objects pledged are described, as follows: In Act No. 1, "Press receipts 150 bales of cotton;" in Act No. 2, "Press receipts 250 bales of cotton," and in Act No. 3, "Covered by receipts for 200 bales of cotton pledged." The press receipts thus referred to are all three precisely alike, except in their dates and the number of the bales specified in them; they read as follows:

Marks.          Bales.          No. 161.          New Orleans,          1899.

SHIPPERS' PRESS.

Operated by the New Orleans Compress and Storage Co., Ltd.

Received from J. J. Gragard ...................................
Two hundred bales of cotton, marked as per margin. Cotton held subject to the return of this receipt properly endorsed.

Various 200.                                        CRESCENT CITY YARD.
170-30 off.

New Orleans Compress and Storage Co., Ltd.
(Signed)  W. SCOTT,
*Acting Secretary and Treasurer.*
JNO. J. GRAGARD,
*President.*

New Orleans Compress and Storage Co., Limited.
Int. Rev. Stamp.  (Signed)  W. SCOTT,
*Acting Secretary and Treasurer.*
JNO. J. CLARK,
*President.*

ENDORSEMENT ON REVERSE OF RECEIPT.

Deliver one hundred and seventy bales of cotton (170).
(Signed)  JNO. J. GRAGARD.
Deliver to the order of Messrs, W. B. Thompson & Co.
METROPOLITAN BANK.
A. C. Wuerpel, *C.*

It is noted that no marks are given in the margin, but instead thereof the word *various* is put down.

The 570 bales of cotton sued for were part of a large lot of cotton, over 2000 bales, stored in one of the compresses of this city for the decedent. This cotton had been consigned to the decedent by his customers, over 100 in number, for sale, and a majority of these customers were indebted to the deceased for advances. The president of the Compress Company testified that the receipts in question did not stand for any particular cotton, but for so many indeterminate bales to be taken indiscriminately from the cotton which was on hand at the date borne by each receipt; that the receipts were given in this form intentionally, in order that a pledge of them might not interfere with the delivery of any specific bales that might be sold out of the same large lot of cotton. He testified, further, that his company did not feel safe in delivering any cotton to the defendant bank when called upon to do so after the death of the decedent, and consented to make the delivery only after an indemnity bond has been furnished by the defendant bank.

This refusal to deliver was fully justified; and the defendant by giving the bond recognized it. On such a receipt the warehouseman could not possibly make any delivery. Abundant testimony to that effect is found in the record. Between the different bales of the cotton there might be great variance, nearly or fully as one to four; that is, one bale may contain nearly twice as much cotton as another and the cotton be of a quality twice as valuable. And in the case of this particular cotton, there was a further and, if possible, a more serious disparity between the different bales; some of it the decedent had not a legal or even a moral right to pledge, whereas some he had a perfect right to pledge. This circumstance added infinitely to the already fatal uncertainty of the receipt, for until proof to the contrary should be administered the presumption would have to obtain that the decedent intended to pledge, and the defendant bank intended to receive in pledge, only those bales which the decedent had the right to pledge, and the identification of these bales in the absence of any designation of them was utterly impracticable.

We must hold that, owing to the indeterminateness of the property intended to be pledged, there was no delivery, and in consequence no pledge. A warehouse receipt in the form prescribed by Act 72 of 1876 may stand for the goods themselves, in such way that its delivery

will operate a delivery of the goods; but in order that this should be. the receipt must represent specific goods, or, at any rate, must represent a specific part of a common, or uniform, mass; and, as just shown, a lot of cotton bales cannot be treated as a common or uniform mass, especially when, to the physical disparity of the component bales, there is added a moral and legal disparity.

Besides, the receipts pledged to the defendant bank were not in the form prescribed by law, and, therefore, could not serve as the subject of a valid pledge. The matter of warehouse receipts and the pledge thereof is regulated in this State by special statute, and non-conformity with this statute is fatal to any attempted pledge. This statute, Act 72 of 1876, expressly declares in its title that its object is "to *govern* the manner in which cotton press receipts shall be issued in all cases where such receipts shall or may be used or pledged as collateral security for money advanced or borrowed on the faith of the property therein specified." Section 2 of the act expressly provides, "All warehouse receipts intended for pledge under the provisions of this act shall be paraphed before being issued, as follows: 'For hypothecation in accordance with the provisions of this act.'" The receipts of the defendant bank were not so paraphed, and as a consequence were not susceptible of forming the subjects of a valid pledge.

We may quote here as expressing exactly the law of this case what was said by this court in the case of the Succession of Lanaux, 46 Ann. 1052, as follows:

"The pledge was, inchoate, a delivery proposed, but never accomplished. The case is of the class of pledge proposed, but not perfected, and nothing is better settled than that an inchoate or executory contract of pledge, not perfected by delivery, confers no rights as against other creditors. The death of the debtor fixes the rights of the creditors as they exist at that moment. The same rule is enforced when the debtor makes a surrender of his property to his creditors. No delivery had been made when that death occurred, none after was possible. Civil Code, Arts. 3133, 3152, 3162, 3182, 3183, 3185; 12 Rob. 243; 2 Ann. 872; 5 Rob. 101; 3 Ann. 582. See the cases collected in 1st Hennen's Digest, p. 686, No. 7; 2nd Hennen's Digest, p. 1504. No. 1. The creditors' case lacks the life of the pledge in a controversy with creditors, *i. e.,* delivery."

There having been no pledge, the action of the defendant bank in taking possession of the cotton was wrongful; and as a consequence the

cotton, or its value, must be restored, and the defendant must compensate the succession for all expenses to which the succession has been put in the effort to rectify the wrong.

Considering that the cotton was being held for better prices, we think that the owners of it should be given the benefit of the better price that prevailed within a few months afterwards, say, by the middle of the following cotton season, or say, the average of the prices that prevailed during the month of November, 1899.

The expenses necessarily incurred in recovering possession of the cotton consist in the attorney's fees. These we fix at $333.33.

The defendant bank had a special mandate to attribute the amount on deposit to the payment of any debts due to itself by the deceased, and having done so it has no further account to render.

Something was said in the argument in regard to settlements having been made between the defendant bank and some of the consignors of the cotton. In all such cases the interest of the plaintiff administrator is restricted to the amount due the succession by the owners of the cotton; and in all such cases there is no reason why the defendant bank should pay the plaintiff administrator the amounts over and above the debts due the succession.

Mrs. Florence P. Williams has intervened in this suit claiming to be the owner of 133 bales of the cotton in controversy. The settlement which the administrator might make with Mrs. Williams, if this cotton had not been taken by the defendant bank, may be made in the present suit. Mrs. Williams' ownership of the cotton being fully established, and the amount of her indebtedness to the succession being also ascertained, she is entitled to the immediate delivery to her of the cotton, or of its value after payment of her debt; and there is no good reason why she should not have a judgment direct against the defendant bank.

It is therefore ordered, adjudged and decreed, that the Metropolitan Bank, defendant herein, pay to Edward Pierson, administrator of the Succession of John J. Gragard, the value of the 570 bales of cotton involved in this suit; less, however, such part of the value of said cotton as is hereafter decreed to be paid to Mrs. Florence P. Williams; the value of said cotton to be determined by the weights and classification according to which said cotton was sold and by a price determined by averaging the prices of cotton of corresponding quality as quoted by the New Orleans Cotton Exchange during the month of November,

1899; the usual expenses attending the selling of cotton to be deducted from the said value.

It is further ordered, adjudged and decreed, that the Metropolitan Bank, defendant herein, pay to Mrs. Florence P. Williams, intervenor herein, the value of the one hundred and thirty-three bales of cotton ascertained in this suit to have belonged to said Mrs. Florence P. Williams, after deducting from same the amount of the debt of the said Mrs. Williams to the Succession of John J. Gragard, namely, the sum of $2358.92; said value to be determined in the manner hereinabove specified.

It is further ordered, adjudged and decreed, that the amount thus decreed to be paid by the Metropolitan Bank to the Succession of Gragard and to Mrs. Florence P. Williams bear interest at the rate of 5 per cent. from the 30 th day of November, 1899.

It is further ordered, adjudged and decreed, that this cause be remanded to the lower court for the purpose of ascertaining the value of the cotton in controversy in accordance with the provisions of the present decree.

It is further ordered, adjudged and decreed, that defendant, the Metropolitan Bank, pay the costs of this suit in both courts.

It is further ordered, adjudged and decreed, that in respect to those bales of cotton in controversy the sale whereof has been ratified by the consignors, there be paid to the plaintiff the value of such cotton no more than whatever amount may be necessary to satisfy the debt of the said consignors to the Succession of Gragard in capital and interest.

The CHIEF JUSTICE and Mr. JUSTICE BREAUX dissent.

Rehearing refused, December 2, 1901.