160 So. 423

SUPERVISOR OF PUBLIC ACCOUNTS v. PATORNO WINES & DISTILLING CORPORATION et al.

No. 33171.

March 4, 1935.

Robert A. Ainsworth, Jr., of New Orleans, for appellee Fraering Brokerage Company, Inc.

LAND, Justice.

The state, through its supervisor of public accounts, procured a writ of attachment on June 18, 1934, for the seizure of certain wines manufactured by the defendant Patorno Wines & Distilling Corporation on a claim for unpaid taxes, to the amount of $1,493.85, due under Act No. 2 of the Extra Session of 1933, with penalties of 20 per cent. thereon, and 10 per cent. attorney's fees.

As defendant presented no defense to the claim, judgment was rendered in favor of the state, maintaining the attachment, with recognition of the lien and privilege resulting therefrom, and of the right of the state to be paid, in preference to other creditors, out of the proceeds of the sale of the property attached.

The Fraering Brokerage Company, Inc., filed a third opposition and claimed a balance of $2,612.19 due it on a note of the defendant Patorno Wines & Distilling Corporation, alleged to be secured by a pledge of a negotiable public warehouse receipt of the Commercial Terminal Warehouse Company, Inc., which, it is asserted by third opponent, covers the wine seized under the writ of attachment by the state, and prayed to be paid in preference to the state, because of the pledge to it of the warehouse receipt in question.

Judgment was rendered in the court below in favor of the third opponent in the sum of $2,555.83, with recognition of its asserted pledge, and ordering payment, in preference

Charles J. Rivet, of New Orleans, for appellant.

to, and by priority over, the state, except the specific state taxes due on 104 barrels of wine, which were ordered to be appraised and sold separately by the civil sheriff for the parish of Orleans.

From this judgment, the state, through the supervisor of public accounts, has appealed.

(1) There is no issue here as to the validity of the attachment. Nor is there any dispute that the 104 barrels of wine seized under the writ is the same wine alleged by the third opponent to be covered by the warehouse receipt.

But the state contends that it is entitled to be paid the full proceeds of the sale of the wine attached, because the pledge asserted by the third opponent is not valid, for the reason that the wine seized under the writ of attachment was contained in the private premises occupied by defendant, Patorno Wines & Distilling Corporation, at Chartres and Dumaine streets, and not in the public warehouse of the Commercial Terminal Warehouse Company, Inc., which issued the warehouse receipt in this case.

The sheriff who executed the writ of attachment "levied this writ on one hundred and four (104) barrels of wine, *contained in the premises occupied by the defendant* (Patorno Wines & Distilling Corporation) *at Chartres and Dumaine Streets*," as shown by the return of the sheriff on the writ. Tr. pp. 7 and 8. (Italics ours.)

The only certificate of authority procured by the Commercial Terminal Warehouse Company, Inc., authorized it "to carry on the business of Public Warehouseman *in the premises situated in the Second District of this City, situated at No. 400 North Peters Street,* in

the Square bounded by North Peters, Clay and St. Louis Streets." (Italics ours.)

The warehouse receipt held by the third opponent shows the warehouseman's address as *400 N. Peters street,* and states that the property was received from the Patorno Wines & Distilling Corporation and is on storage in "The Commercial Warehouses, Divisions No. 7, Bonded Winery Division *at 910–914 Chartres Street.*" (Italics ours.)

However, the president of the Commercial Terminal Warehouse Company, a witness for the third opponent, had to admit finally that his so-called "Commercial Warehouses *at 910–914 Chartres Street*" consisted of *a single room* in the building occupied by defendant Patorno Wines & Distilling Corporation, and that the only wine therein contained was that of Patorno Wines & Distilling Corporation. (Italics ours.)

■ Section 1 of Act No. 54 of 1920, as amended by Act No. 82 of 1926, requires, as a condition precedent to the transacting of business in any public warehouse, that the proprietor, lessee, or manager procure a certificate of authority from the civil district court of the parish in which the warehouse or warehouses are situated.

To obtain the certificate of authority, the applicant is required to present a written petition in which he must set forth, among other things, *"the location and name of such warehouse or warehouses"*; and must give bond "in the penal sum of $25,000.00," where a warehouse is situated in any municipality having a population of 50,000 or more, "for the faithful performance of his duty as a Public Warehouseman, and his full and unreserved

compliance with all laws of the State relating to such business."

Sections 2 and 3 of Act No. 54 of 1920 provide penalties for doing business without compliance with the provisions of the act, and for violation by the warehouseman of any of its provisions.

In section 4 of the act, "warehouseman" is defined as "a person, partnership or corporation *lawfully* engaged in the business of storing goods, chattels, merchandise, or crude petroleum for profit."

It follows, necessarily, that a warehouse receipt can be issued only by one *"lawfully"* engaged in the business.

One who has not complied with the law cannot be said to be lawfully engaged in a business regulated by law. Besides, the statute in this case subjects the offender to severe penalties for the violation of its requirements.

The warehouse receipt held by the third opponent was issued in plain violation of the law, as the Commercial Terminal Warehouse Company, Inc., had procured no certificate authorizing it to conduct a warehouse at Nos. 910–914 Chartres street, and gave no bond covering any warehouse at that address.

The Commercial Terminal Warehouse Company, Inc., was not authorized to conduct a warehouse in these premises, and therefore could not issue a valid warehouse receipt for property therein.

The requirement of section 1 of Act No. 82 of 1926, as to the setting forth in the petition for a certificate *"the location and name of such warehouse or warehouses,"* would be defeated, and no creditor could ever know whether the property sought to be seized is

in the possession of the debtor, or in a unit of a public warehouse covered by a pledged warehouse receipt, if a public warehouseman were permitted to constitute a room, or space, in any private building, as a part of its warehouse, without designating the location of its various units.

The third opponent knew that the tax had not been paid on the wine subject to the supposed public warehouse receipt. Such fact is disclosed both by the note and the warehouse receipt. Yet, the third opponent permitted 96 barrels of wine to be released, as shown on the reverse of the warehouse receipt, without seeing to the payment of the tax due on same.

Appellee's argument that the validity of the pledge is not affected, even if the warehouse receipt issued illegally, is not sound in law.

Article 3157 of the Civil Code provides that: "The pawn invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of his debtor, out of the product of the *movable, corporeal or incorporeal*, which has been thus burdened." (Italics ours.)

Article 3158 of the Civil Code declares: "But this privilege shall take place *against third persons* only in case the pledge is proved *by some written instrument.*" (Italics ours.)

As the warehouse receipt was issued in violation of a prohibitory and penal statute, it is null and void and of no effect. The third opponent has produced no other written instrument to show a pledge of the wines subject to the tax in this case claimed by the state, a third person. In the absence of such an instrument, it is idle to speak *of the delivery* of

the wines, either to the pledgee, or to a third person acting as agent of the pledgee, as perfecting the pledge.

In the instant case, the warehouseman did not consent to act as the pledgee's agent to keep the property, nor was there any written instrument containing such stipulation. The only relations between appellee and the warehouseman are such as flow from the law to the holder of a negotiable warehouse receipt.

In Succession of Gragard v. Metropolitan Bank, 106 La. 298, 303, 30 So. 885, 887, it is said: "Besides, the receipts pledged to the defendant bank were not in the form prescribed by law, and therefore could not serve as the subject of a valid pledge. The matter of warehouse receipts * * * is regulated in this state by special statute, and *nonconformity with this statute is fatal to any attempted pledge*." (Italics ours.)

For greater reasons, an attempted pledge, under a warehouse receipt, of wines or other movables, contained in private premises, not located or named as a public warehouse in the certificate obtained by a public warehouseman, must be fatal to such pledge, on the ground of *a direct violation of the statute*, a step far beyond mere nonconformity with its requirements in the issuing of such receipts.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that the third opposition of Fraering Brokerage Company, Inc., appellee, be denied and dismissed at its costs.

O'NIELL, C. J., dissenting.